# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **MARTIN CREUTZ**, **BONNIE COGSWELL, PHYLLIS RICE, KATHY VALENTINE,** and **TIFFANY CALLAHAN II,** *individually and on behalf of all others similarly situated*, | Case No.: 1:24-cv-00447 |
| | Judge Jeffrey P. Hopkins |
| Plaintiffs, | |
| v. | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| **CARESPRING HEALTH CARE MANAGEMENT, LLC**, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiffs Martin Creutz, Bonnie Cogswell, Phyllis Rice, Kathy Valentine, and Tiffany Callahan II (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Carespring Health Care Management, LLC ("Defendant" or "Carespring") based upon personal knowledge with respect to themselves and upon information and belief derived from, among other things, investigation by their counsel and review of public documents as to all other matters:

## <u>INTRODUCTION</u>

1.       Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard Plaintiffs' and Class Members' protected health information ("PHI")[1] and personally identifiable information ("PII,"[2] collectively referred to as "Private Information")

---

[1] Protected health information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act. *Inter alia*, PHI includes test results, procedure descriptions, diagnoses, personal or family medical histories and data points applied to a set of demographic information for a particular patient.

[2] Personally identifiable information ("PII") generally incorporates information that can be

stored within Defendant's information network, including, without limitation, names, dates of birth, Social Security numbers, financial information, health insurance information, and medical information.

2. With this action, Plaintiffs seek to hold Defendant responsible for the harms it caused and will continue to cause Plaintiffs and thousands of other similarly situated persons in the massive and preventable cyberattack purportedly discovered by Defendant on July 16 2024, by which cybercriminals infiltrated Defendant's inadequately protected network and accessed the Private Information which was being kept under-protected (the "Data Breach").[3]

3. Plaintiffs further seek to hold Defendant responsible for failing to ensure that their Private Information in its possession was maintained in a manner consistent with industry standards, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule (45 CFR, Part 160 and Parts A and E of Part 164), the HIPAA Security Rule (45 CFR Part 160 and Subparts A and C of Part 164) and other relevant standards.

4. While Defendant states that it first discovered the breach on July 16, 2024, it did not begin informing victims of the Data Breach until nearly a month later, on August 15, 2024. In addition to providing delayed notification to Plaintiffs and Class Members, Defendant's notification was insufficient in that it failed to inform victims both of when the Data Breach occurred and of its duration. Indeed, Plaintiffs and Class Members were wholly unaware of the

---

used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

[3] *Almost 77K Compromised in Carespring Breach*, SCMedia (Aug. 20, 2024), https://www.scmagazine.com/brief/almost-77k-compromised-in-carespring-breach (last visited May 2, 2025).

Data Breach until they received Notice of Breach letters from Defendant, dated August 15, 2024.

5.      As part of its regular course of business, Defendant acquired, collected and stored Plaintiffs' and Class Members' Private Information. Therefore, at all relevant times, Defendant knew or should have known that Plaintiffs and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential Private Information.

6.      HIPAA establishes national minimum standards for the protection of individuals' medical records and other protected health information. HIPAA generally applies to health plans and insurers, healthcare clearinghouses and those healthcare providers that conduct certain healthcare transactions electronically and sets minimum standards for Defendant's maintenance of Plaintiffs' and Class Members' Private Information. More specifically, HIPAA requires appropriate safeguards be maintained by organizations such as Defendant to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of such information without customer/patient authorization. HIPAA also establishes a series of rights over Plaintiffs' and Class Members' Private Information, including rights to examine and obtain copies of their health records and to request corrections thereto.

7.      Additionally, the HIPAA Security Rule establishes national standards to protect individuals' electronic protected health information that is created, received, used or maintained by a covered entity. The HIPAA Security Rule requires appropriate administrative, physical and technical safeguards to ensure the confidentiality, integrity and security of electronic protected health information.

8.      By obtaining, collecting, using and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties to the individuals whose Private Information it possessed, including Plaintiffs and Class Members. These duties arise

from HIPAA, in addition to other state and federal statutes and regulations and common law principles. Plaintiffs do not assert direct violations of HIPAA, but rather assert their various claims against Defendant as merely being predicated upon the duties set forth in HIPAA.

9.     At all relevant times herein, Defendant disregarded Plaintiffs' and Class Members' rights by intentionally, willfully, recklessly and/or negligently failing to take and implement adequate and reasonable measures to ensure that their Private Information was safeguarded; failing to take available steps to prevent an unauthorized disclosure of their data and Private Information; and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, Plaintiffs' and Class Members' Private Information was compromised and disclosed to an unknown and unauthorized third party—an undoubtedly nefarious third party seeking to profit from this disclosure by defrauding Plaintiffs and Class Members in the future. Plaintiffs and Class Members have a continuing interest in ensuring their information is and remains safe and are entitled to injunctive and other equitable relief.

**THE PARTIES**

10.     Plaintiff Martin Creutz is an adult individual and, at all relevant times herein, has been a citizen of Kentucky.

11.     Plaintiff Bonnie Cogswell is an adult individual and, at all relevant times herein, has been a citizen of Kentucky.

12.     Plaintiff Phyllis Rice is an adult individual and, at all relevant times herein, has been a citizen of Ohio.

13.     Plaintiff Kathy Valentine is an adult individual and, at all relevant times herein, has been a citizen of the State of Ohio.

14.     Plaintiff Tiffany Callahan, II is an adult individual and, at all relevant times herein, has been a citizen of the State of Ohio.

15.     Defendant Carespring Health Care Management, LLC, is a limited liability company formed under the laws of Ohio with its principal place of business located in Loveland, Ohio. Defendant operates Skilled Nursing Facilities and similar services in Ohio and Kentucky.[4]

16.     The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiffs. Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## JURISDICTION AND VENUE

17.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d), because this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class and at least one Class Member is a citizen of a state different from Defendant.

18.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

19.     Defendant is formed under the law of the State where this District is located, maintains its principal place of business in this State, and routinely conducts business in this State.

20.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant maintains its principal place of business in this District, and a substantial part of the events that gave rise to Plaintiffs' claims took place within this District.

---

[4] Carespring, *Skilled Nursing Facilities in Cincinnati, Dayton, and Northern Kentucky*, https://www.carespring.com/skilled-nursing-facilities (last visited May 2, 2025).

## PLAINTIFFS' EXPERIENCES

*Plaintiff Creutz*

21.     As a requisite to Plaintiff Creutz's wife receiving treatment from Defendant, Plaintiff provided his Private Information to Defendant and trusted that the information would be safeguarded according to internal policies and state and federal law. Upon receipt, Private Information was entered and stored on Defendant's network and systems.

22.     Plaintiff Creutz is very careful about sharing his sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

23.     Plaintiff Creutz stores any documents containing his sensitive Private Information in a safe and secure location or destroys the documents. Had he known Defendant failed to follow basic industry security standards and failed to implement systems to protect his Private Information, he would not have provided that information to Defendant.

24.     On or about August 20, 2024, Plaintiff received a letter dated August 15, 2024, regarding the Data Breach.

25.     The Notice Letter dated August 15, 2024, from Defendant notified Plaintiff Creutz that its systems had been accessed by an unauthorized third party and Plaintiff's wife's Private Information may have been involved in the Data Breach, which included Plaintiff's wife's Medicaid ID, date of birth, Social Security number, account number, medical diagnosis and treatment information, and health insurance information.

26.     Because Plaintiff Creutz was the primary caregiver for his wife and financially responsible for her care, Plaintiff provided Defendant with his Private Information as a requisite to his wife receiving care from Defendant.

27.     As a result of the Data Breach and Defendant's Notice of Data Breach, Plaintiff heeded Defendant's warning and spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports to ensure no suspicious or fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. Moreover, this time was spent, in part, at Defendant's direction by way of the Data Breach notice.

28.     Even with the best response, the harm caused to Plaintiff Creutz cannot be undone.

29.     Plaintiff Creutz suffered actual injury in the form of attempted fraudulent transactions on his accounts between October 23, 2023 and November 7, 2023, damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

30.     Plaintiff Creutz suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

31.     Plaintiff Creutz has suffered imminent and impending injury arising from the ongoing substantial risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties and criminals.

32.     Future identity theft monitoring is reasonable and necessary and such services will include future costs and expenses.

33.     Plaintiff Creutz has a continuing interest in ensuring that Plaintiff's Private Information, which, upon information and belief, remains in Defendant's possession, is protected, and safeguarded from future breaches.

*Plaintiff Cogswell*

34.    When Plaintiff Cogswell became a patient, Defendant required that she provide it with substantial amounts of her Private Information.

35.    On or about August 15, 2024, Plaintiff Cogswell received the Notice, which told her that her Private Information had been impacted during the Data Breach. The Notice informed her that the Private Information stolen included her full name and Social Security number.

36.    The Notice offered Plaintiff Cogswell only one year of credit monitoring services. One year of credit monitoring is not sufficient given that Plaintiff Cogswell will now experience a lifetime of increased risk of identity theft, including but not limited to, potential medical fraud.

37.    Plaintiff Cogswell spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring Plaintiff Cogswell's accounts and seeking legal counsel regarding Plaintiff Cogswell's options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

38.    Plaintiff Cogswell suffered actual injury in the form of damages to and diminution in the value of Plaintiff Cogswell's Private Information—a form of intangible property that Plaintiff Cogswell entrusted to Defendant, which was compromised in and as a result of the Data Breach.

39.    Plaintiff Cogswell suffered lost time, annoyance, interference and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling Plaintiff Cogswell's Private Information.

40. Plaintiff Cogswell suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse resulting from Plaintiff Cogswell's Private Information being placed in the hands of unauthorized third parties/criminals.

41. Plaintiff Cogswell has a continuing interest in ensuring that Plaintiff Cogswell's Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff Rice***

42. When Plaintiff Rice became a patient, Defendant required that she provide it with substantial amounts of her Private Information, including PHI.

43. On or about August 15, 2024, Plaintiff Rice received the Notice, which told her that her Private Information had been impacted during the Data Breach. The Notice informed her that the Private Information stolen included her Social Security number.

44. The Notice offered Plaintiff Rice only one year of credit monitoring services. One year of credit monitoring is not sufficient given that Plaintiff Rice will now experience a lifetime of increased risk of identity theft, including but not limited to, potential medical fraud.

45. Plaintiff Rice suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

46. Plaintiff Rice would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' personal and health information from theft, and that those systems were subject to a data breach.

47.     Plaintiff Rice suffered actual injury in the form of having her PII and PHI compromised and/or stolen as a result of the Data Breach.

48.     Plaintiff Rice suffered actual injury in the form of damages to and diminution in the value of her personal, health, and financial information – a form of intangible property that Plaintiff Rice entrusted to Defendant for the purpose of receiving healthcare services from Defendant and which was compromised in, and as a result of, the Data Breach.

49.     Plaintiff Rice suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

50.     Plaintiff Rice has a continuing interest in ensuring that her Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches.

51.     As a result of the Data Breach, Plaintiff Rice made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant. Plaintiff Rice has spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

52.     As a result of the Data Breach, Plaintiff Rice has suffered anxiety as a result of the release of her Private Information, which she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of committing cyber and other crimes against her including, but not limited to, fraud and identity theft. Plaintiff Rice is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on her life.

53. Plaintiff Rice also suffered actual injury from having her Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from Plaintiff Rice; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

54. As a result of the Data Breach, Plaintiff Rice anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

***Plaintiff Valentine***

55. Plaintiff Valentine is a former employee of Defendant's. In the course of receiving employment from Defendant, Plaintiff Valentine was required to share certain of her Private Information, including her name, address, contact information, Social Security number, financial information, insurance information, and other information.

56. Plaintiff is not aware of any data breaches other than this one that exposed her Private Information and is concerned that it has now been exposed to bad actors.

57. As a result, Plaintiff Valentine has taken multiple steps to avoid identity theft, including closely tracking her credit monitoring service and carefully reviewing all her accounts. Plaintiff has already spent multiple hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

58. Plaintiff Valentine suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Private Information, a form of property that Defendant obtained from

Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

59. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

60. Plaintiff greatly values her privacy, especially information about her health, and would not have provided her Private Information, undertaken the services and paid the amounts that he did if she had known that her Private Information would be maintained using inadequate data security systems

### Plaintiff Callahan

61. Plaintiff Callahan is a former employee of Defendant's. In the course of receiving employment from Defendant, Plaintiff Callahan was required to share certain of her Private Information, including her name, address, contact information, Social Security number, financial information, insurance information, and other information.

62. Plaintiff Callahan is not aware of any data breaches other than this one that exposed her Private Information and is concerned that it has now been exposed to bad actors.

63. As a result, she has taken multiple steps to avoid identity theft, including closely tracking her credit monitoring service and carefully reviewing all her accounts. Plaintiff Callahan has already spent multiple hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities

64. Plaintiff Callahan suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and

diminution in the value of Private Information, a form of property that Defendant obtained from Plaintiff; (b) violation of privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

65.     As a result of the Data Breach, Plaintiff Callahan anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

66.     Plaintiff Callahan greatly values her privacy, especially information about her health, and would not have provided her Private Information, undertaken the services and paid the amounts that he did if she had known that her Private Information would be maintained using inadequate data security systems.

***Plaintiffs and Class Members Experiences***

67.     In its regular course of business, Defendant received highly sensitive Private Information from Plaintiffs in connection with the healthcare services Plaintiffs obtained. As a result, Plaintiffs' information was among the data accessed by an unauthorized third party in Defendant's Data Breach.

68.     At all times herein relevant, Plaintiffs were members of the Class.

69.     Plaintiffs' Private Information was exposed in the Data Breach because Defendant negligently and/or recklessly stored and/or shared Plaintiffs' Private Information. Plaintiffs' Private Information was within the possession and control of Defendant at the time of the Data Breach.

70. After Defendant discovered the Data Breach, Plaintiffs received Notice of Breach letters from Defendant stating that Plaintiffs' Private Information was involved in the Data Breach (the "Notice").

71. As a result, Plaintiffs have expended time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring Plaintiffs' accounts and seeking legal counsel regarding their options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

72. Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their Private Information—a form of intangible property that Plaintiffs entrusted to Defendant, which was compromised in and as a result of the Data Breach.

73. Plaintiffs suffered lost time, annoyance, interference and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling Plaintiffs' Private Information.

74. Plaintiffs suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse resulting from Plaintiffs' Private Information being placed in the hands of unauthorized third parties/criminals.

75. Plaintiffs have a continuing interest in ensuring that Plaintiffs' Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of Plaintiffs and the following nationwide Class:

> **Nationwide Class:**
> "All individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before July 16, 2024."

77.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including, but not limited to, its departments, agencies, divisions, bureaus, boards, sections, groups, counsel and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

78.     In the alternative, Plaintiffs may request additional subclasses as necessary based, e.g., on the types of Private Information that were compromised.

79.     Plaintiffs reserve the right to amend the above definition or to propose subclasses in subsequent pleadings and its motion for class certification.

80.     This action has been brought and may properly be maintained as a class action under Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Class is easily ascertainable.

> a.      Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not

impossible. Membership in the Class will be determined by analysis of Defendant's records.

b.   <u>Commonality</u>: Plaintiffs and Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1)   Whether Defendant had a legal duty to Plaintiffs and the Classes to exercise due care in collecting, storing, using and/or safeguarding their Private Information;

2)   Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3)   Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4)   Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5)   Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

6)   Whether Defendant adequately, promptly and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

7)   How and when Defendant actually learned of the Data Breach;

8) Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of Plaintiffs' and Class Members' Private Information;

9) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to safeguard Plaintiffs' and Class Members' Private Information;

11) Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct; and

12) Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.   Typicality: Plaintiffs' claims are typical of the claims of the Plaintiffs' Classes. Plaintiffs and all Class Members sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d.   Adequacy of Representation: Plaintiffs in this class action is an adequate representative of each of the Plaintiffs Classes in that the Plaintiffs have the same interest in the litigation of this case as the Class Members, is committed to vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Classes in their entireties. Plaintiffs anticipate no management difficulties in this litigation.

e.   Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiffs Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Plaintiffs Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

81.   Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, such that it is impracticable to bring all Class Members before the Court.

82.   This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes in their entireties. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly

and Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Classes in their entireties, not on facts or law applicable only to Plaintiffs.

83.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

84.    Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### The Cyberattack

85.    In the course of the Data Breach, one or more unauthorized third parties accessed Class Members' Private Information. Plaintiffs and Class Members were among the individuals whose data was accessed in the Data Breach.

86.    According to the Data Breach Notification and/or publicly filed documents, Plaintiffs state, on information and belief, that thousands of persons were affected by the Data Breach.

87.    Plaintiffs were provided the information detailed above upon receipt of Notice of Breach letters from Defendant. Plaintiffs were not aware of the Data Breach until receiving Defendant's Notice of Breach letter.

### Defendant's Failed Response to the Breach

88.    Upon information and belief, the unauthorized third-party cybercriminals gained access to Plaintiffs' and Class Members' Private Information with the intent of misusing the

Private Information, including marketing and selling Plaintiffs' and Class Members' Private Information.

89.     Not until long after it claims to have discovered the Data Breach did Defendant begin sending the Notice to persons whose Private Information Defendant confirmed was potentially compromised as a result of the Data Breach. The Notice provided basic details of the Data Breach and Defendant's recommended next steps.

90.     Plaintiffs and Class Members were required to provide their Private Information to Defendant in order to receive services and in the course of employment. Thus, Defendant created, collected and stored Plaintiffs' and Class Members' Private Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

91.     Despite this, Plaintiffs and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used and what steps are being taken, if any, to secure their Private Information going forward. Plaintiffs and Class Members are thus left to speculate as to where their Private Information ended up, who has used it and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

92.     Plaintiffs' and Class Members' Private Information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed Private Information for targeted marketing without Plaintiffs' and/or Class Members' approval. Either way, unauthorized individuals can now easily access Plaintiffs' and Class Members' Private Information.

**Defendant Collected and Stored Class Members' Private Information**

93.     Defendant acquired, collected, stored and had a duty to ensure reasonable security over Plaintiffs' and Class Members' Private Information.

94.     As a condition of its relationships with Plaintiffs and Class Members, Defendant required that Plaintiffs and Class Members entrust Defendant with highly sensitive and confidential Private Information. Defendant, in turn, stored that information on Defendant's system that was ultimately affected by the Data Breach.

95.     By obtaining, collecting and storing Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties over the Private Information and knew or should have known that it was thereafter responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

96.     Plaintiffs and Class Members have taken reasonable steps to maintain their Private Information's confidentiality. Plaintiffs and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only and to make only authorized disclosures of this information.

97.     Defendant could have prevented the Data Breach by properly securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiffs' and Class Members' Private Information.

98.     Defendant's negligence in safeguarding Plaintiffs' and Class Members' Private Information is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

99.     Due to the high-profile nature of these breaches, and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring in

its industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large, sophisticated operation with the resources to put adequate data security protocols in place.

100. And yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiffs' and Class Members' Private Information from being compromised.

**<u>Defendant Had an Obligation to Protect the Stolen Information</u>**

101. In failing to adequately secure Plaintiffs' and Class Members' sensitive data, Defendant breached duties it owed Plaintiffs and Class Members under federal and state statutory and common law.

102. Plaintiffs and Class Members surrendered their highly sensitive Private Information to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their Private Information, independent of any statute.

103. Moreover, under HIPAA, health insurance providers have an affirmative duty to keep patients' Private Information confidential. As a covered entity, Defendant has a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiffs' and Class Members' Private Information.

104. Because Defendant is covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information") and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

105.     HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

106.     HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

107.     HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302. "Electronic protected health information" is "individually identifiable health information [...] that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

108.     HIPAA's Security Rule requires Defendant to do the following:

    a.   Ensure the confidentiality, integrity and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains or transmits;

    b.   Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.   Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.   Ensure compliance by its workforce.

109.     HIPAA also requires Defendant to "review and modify the security measures implemented [...] as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic

protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1). Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

110.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

111.    In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks and protocols adequately protected Plaintiffs' and Class Members' Private Information.

112.    Defendant owed a duty to Plaintiffs and Class Members to design, maintain and test its computer systems, servers and networks to ensure that all Private Information in its possession was adequately secured and protected.

113.    Defendant owed a duty to Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect all Private Information in its

possession, including not sharing information with other entities who maintained sub-standard data security systems.

114.    Defendant owed a duty to Plaintiffs and Class Members to implement processes that would immediately detect a breach of its data security systems in a timely manner.

115.    Defendant owed a duty to Plaintiffs and Class Members to act upon data security warnings and alerts in a timely fashion.

116.    Defendant owed a duty to Plaintiffs and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust their Private Information to Defendant.

117.    Defendant owed a duty of care to Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

118.    Defendant owed a duty to Plaintiffs and Class Members to encrypt and/or more reliably encrypt Plaintiffs' and Class Members' Private Information and monitor user behavior and activity in order to identity possible threats.

**Value of the Relevant Sensitive Information**

119.    While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, medical prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, Private Information is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen

payment card numbers, Social Security numbers and other personal information on a number of underground internet websites.

120.     The high value of Private Information to criminals is further evidenced by the prices they will pay for it through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[5] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[6] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[7]

121.     Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[8] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[9] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[10]

---

[5] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited May 2, 2025).

[6] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited May 2, 2025).

[7] VPNOverview, *In the Dark* (2019), https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited May 2, 2025).

[8]    Adil Hussain Seh, *et al.*, *Healthcare Data Breaches: Insights and Implications*, Healthcare (13 May, 2020), doi:10.3390/healthcare8020133, https://pmc.ncbi.nlm.nih.gov/articles/PMC7349636 (last visited May 2, 2025).

[9] Steve Alder, *December 2019 Healthcare Data Breach Report*, The HIPAA Journal (Jan. 21, 2020), https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (last visited May 2, 2025).

[10] Rody Quinlan, *Healthcare Security: Ransomware Plays a Prominent Role in COVID-19 Era Breaches*, Tenable (Mar. 10, 2021), https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches/ (last visited May 2, 2025).

122. These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and Class Members. For example, it is believed that certain Private Information compromised in the 2017 Equifax data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant.

123. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

124. Identity thieves can use Private Information, such as that of Plaintiffs and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

125. The ramifications of Defendant's failure to keep secure Plaintiffs' and Class Members' Private Information are long lasting and severe. Once Private Information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, Plaintiffs' and Class Members' Private Information was taken by

hackers to engage in identity theft or to sell it to other criminals who will purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

126.    There may be a time lag between when harm occurs versus when it is discovered and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

127.    The harm to Plaintiffs and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[12]

128.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[13]

---

[11] GAO, *Report to Congressional Requesters*, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last visited May 2, 2025).

[12] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, Kaiser Health News (Feb. 7, 2014), https://khn.org/news/rise-of-indentity-theft/ (last visited May 2, 2025).

[13] *Id.*

129.    When cybercriminals access financial information, health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Plaintiffs and Class Members.

130.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[14] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[15]

131.    Data breaches are preventable. As Lucy Thompson wrote in the American Bar Association's publication *Data Breach and Encryption Handbook*, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[16] She added that, "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[17]

132.    Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures. Appropriate information

---

[14] Elinor Mills, *Study: Medical Identity Theft is Costly for Victims*, CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed May 2, 2025).

[15] *Id.; see also Medical Identity Fraud By The Numbers*, CBS News (Apr. 1, 2014), https://www.cbsnews.com/amp/newyork/news/medical-identity-fraud-by-the-numbers/ (last accessed May 2, 2025).

[16] Lucy L. Thompson, Despite the Alarming Trends, Data Breaches Are Preventable, 17, in Data Breach and Encryption Handbook (Lucy Thompson, ed., 2012).

[17] Id. at 28.

security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*.[18]

133.    Here, Defendant knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiffs' and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiffs and Class Members as a result of a breach of this magnitude. As detailed above, Defendant knew or should have known that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiffs and Class Members. Its failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

134.    Defendant disregarded the rights of Plaintiffs and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class Members' Private Information, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

**CLAIMS FOR RELIEF**

**COUNT I**
**Negligence**
**(On behalf of Plaintiffs and the Nationwide Class)**

135.    Plaintiffs and Class Members repeat and reallege each and every allegation in the Complaint as if fully set forth herein.

---

[18] *Id.*

136.    At all times herein relevant, Defendant owed Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Plaintiffs' and Class Members' Private Information on its computer systems.

137.    Among these duties, Defendant was expected:

a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the Private Information in its possession;

b.    to protect Plaintiffs' and Class Members' Private Information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c.    to implement processes to quickly detect the Data Breach and to timely act on warnings about data breaches; and

d.    to promptly notify Plaintiffs and Class Members of any data breach, security incident or intrusion that affected or may have affected their Private Information.

138.    Defendant knew that the Private Information was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

139.    Defendant knew or should have known of the risks inherent in collecting and storing Private Information, the vulnerabilities of its data security systems and the importance of adequate security. Defendant knew about numerous, well-publicized data breaches.

140. Defendant knew or should have known that its data systems and networks did not adequately safeguard Plaintiffs' and Class Members' Private Information.

141. Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiffs and Class Members had entrusted to it.

142. Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

143. Because Defendant knew that a breach of its systems could damage thousands of individuals, including Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the Private Information contained thereon.

144. Plaintiffs' and Class Members' willingness to entrust Defendant with its Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems and the Private Information it stored on them from attack. Thus, Defendant had a special relationship with Plaintiffs and Class Members.

145. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant and Plaintiffs and/or the remaining Class Members.

146. Defendant breached its general duty of care to Plaintiffs and Class Members in, but not necessarily limited to, the following ways:

a.      by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information;

b.      by failing to timely and accurately disclose that Plaintiffs' and Class Members' Private Information had been improperly acquired or accessed;

c.      by failing to adequately protect and safeguard the Private Information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information;

d.      by failing to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Plaintiffs' and Class Members' Private Information, misuse the Private Information and intentionally disclose it to others without consent;

e.      by failing to adequately train its employees to not store Private Information longer than absolutely necessary;

f.      by failing to consistently enforce security policies aimed at protecting Plaintiffs' and the Class Members' Private Information;

g.      by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h.      by failing to encrypt Plaintiffs' and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

147.     Defendant's willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

148.     As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

149.     The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the Private Information to Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their Private Information.

150.     Defendant breached its duty to notify Plaintiffs and Class Members of the unauthorized access by waiting excessively after learning of the Data Breach to notify Plaintiffs and Class Members and then by failing and continuing to fail to provide Plaintiffs and Class Members sufficient information regarding the breach. To date, Defendant has not provided sufficient information to Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and Class Members.

151.     Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class Members, Defendant prevented Plaintiffs and Class Members from taking meaningful, proactive steps to, *inter alia*, secure and/or access their Private Information.

152.     There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiffs' and Class Members' Private Information and the harm suffered, or risk of imminent harm suffered, by Plaintiffs and Class Members. Plaintiffs' and Class Members' Private Information was accessed as the proximate result of Defendant's failure to

exercise reasonable care in safeguarding such Private Information by adopting, implementing and maintaining appropriate security measures.

153.     Defendant's wrongful actions, inactions and omissions constituted (and continue to constitute) common law negligence.

154.     The damages Plaintiffs and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

155.     Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

156.     Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and Class Members.

157.     As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered and will continue to suffer injury, including, but not limited to, (i) actual identity theft, (ii) the loss of the opportunity of how their Private Information is used, (iii) the compromise, publication and/or theft of their Private Information, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud and/or unauthorized use of their Private Information, (v) lost opportunity costs associated with effort

35

expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from embarrassment and identity theft, (vi) lost continuity in relation to their personal records, (vii) the continued risk to their Private Information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information in its continued possession, and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

158. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy and other economic and noneconomic losses.

159. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered and will continue to suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession.

<u>**COUNT II**</u>
**Breach of Implied Contract**
**(On behalf of Plaintiffs and the Nationwide Class)**

160. Plaintiffs and Class Members repeat and reallege each and every allegation in the Complaint as if fully set forth herein.

161.    Through their regular course of conduct, Defendant, Plaintiffs and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' Private Information.

162.    Defendant solicited, invited and required Plaintiffs and Class Members to provide their Private Information as part of Defendant's regular business practices, including hiring employees and providing medical care. Plaintiffs and Class Members accepted Defendant's offers by, in part, providing their Private Information to Defendant.

163.    As a condition of being direct customers and/or employees of Defendant, Plaintiffs and Class Members provided and entrusted their Private Information to Defendant. In so doing, Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Plaintiffs and Class Members if its data had been breached and compromised or stolen.

164.    A meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their Private Information to Defendant, in exchange for, amongst other things, the protection of their Private Information.

165.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

166.    Defendant breached the implied contracts it made with Plaintiffs and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

167.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and Class Members have suffered and will continue to suffer (i) ongoing, imminent and impending threat of identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (f) other economic and noneconomic harm.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of Plaintiffs and the Nationwide Class)

168.    Plaintiffs and Class Members repeat and reallege each and every allegation in the Complaint as if fully set forth herein.

169.    Every contract in this State has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

170.    Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant.

171.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

172.     Defendant acted in  bad faith and/or  with malicious motive in  denying Plaintiffs and Class Members the  full benefit of their bargains as originally intended by  the parties, thereby causing them  injury in an amount to be determined  at trial.

## COUNT IV
**Declaratory Judgment**
**(On behalf of Plaintiffs and the Nationwide Class)**

173.     Plaintiffs and Class Members repeat and reallege each and every allegation in the Complaint as if fully set forth herein.

174.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

175.     An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard their customers' and employees' Private Information and with regard to whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their Private Information. Plaintiffs allege that Defendant's data security measures remain inadequate. Defendant denies these allegations.  Furthermore, Plaintiffs and Class Members continue  to suffer injury as a result of the compromise of their Private Information and  remain at imminent risk that further compromises of their Private Information will occur in the future.

176.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following

      a.     Defendant continues to owe a legal duty to secure Private Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes; and

      b.     Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' and employees' Private Information.

177.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' Private Information.

178.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach affecting Defendant. The risk of another such breach is real, immediate, and substantial. If another breach affecting

179.    Defendants occurs, Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and/or quantifiable, and because they will be forced to bring multiple lawsuits to rectify the same conduct.

180.    The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach affecting Defendant occurs, Plaintiffs and Class Members will likely be subjected to substantial identify theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures anyway.

181.    Imposition of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach affecting

Defendants, thus eliminating the additional injuries that would result to Plaintiffs and numerous of consumers whose confidential and valuable information would be further compromised.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

1.      An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class Counsel and Plaintiffs as Class Representatives of the Class requested herein;

2.      For an award of damages, including actual, nominal and consequential damages, as allowed by law in an amount to be determined;

3.      For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including, but not limited to, an Order:

    a.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    b.      requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

    c.      requiring Defendant to delete and purge Plaintiffs' and Class Members' Private Information unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

d.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' Private Information;

e.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests and audits on Defendant's systems on a periodic basis;

f.  prohibiting Defendant from maintaining Plaintiffs' and Class Members' Private Information on a cloud-based database;

g.  requiring Defendant to segment data by creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.  requiring Defendant to conduct regular database scanning and securing checks;

i.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiffs and Class Members;

j.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing

employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

k.    requiring Defendant to implement, maintain, review and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested and updated; and

l.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

4.    An order requiring Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

5.    For pre-judgment and post-judgment interest on all amounts awarded, at the prevailing legal rate;

6.    For an award of attorneys' fees, costs and litigation expenses, as allowed by law; and

7.    For all other Orders, findings and determinations identified and sought in this Complaint, and such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs, individually and on behalf of Class Members, hereby demand a trial by jury of all issues so triable herein.

Dated: May 2, 2025                   Respectfully submitted,

                                    */s/ Isabel C. DeMarco*
                                    Isabel C. DeMarco (103550)

**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*idemarco@msdlegal.com*

Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (212) 532-1091
*tbean@sirillp.com*

Scott Edward Cole*
**COLE & VAN NOTE**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
*sec@colevannote.com*

*Interim Co-Lead Class Counsel*
*for the Proposed Class*

Joseph M. Lyon (0076050)
Kevin M. Cox (0099584)
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011
*jlyon@thelyonfirm.com*
*kcox@thelyonfirm.com*

*Attorneys for Plaintiff Creutz*

Philip J. Krzeski (0095713)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue, Suite 1700
Minneapolis, MN 55401-2138
Telephone: (612) 339-7300
Facsimile: (612) 36-2940
*pkrzeski@chestnutcambronne.com*

*Attorney for Plaintiffs Cogswell and Rice*

Terence R. Coates (0085579)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

*Attorneys for Plaintiffs Valentine and Callahan*


*\*Pro Hac Vice Forthcoming*